UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOROTHY A. KING,

        Plaintiff,                            Civil Action No. 12-11343

        v.                                 District Judge Julian Abele Cook
                                           Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [9] AND
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]**

Plaintiff Dorothy Ann King appeals Defendant Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits. (*See* Dkt. 1, Compl.) Before the Court for a report and recommendation (Dkt. 2) are the parties' cross-motions for summary judgment (Dkts. 9, 16). For the reasons set forth below, this Court finds that substantial evidence supports the ALJ's decision. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 16) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

**I. BACKGROUND**

King was 50 years old on the alleged onset date of February 18, 2010. (*See* Tr. 118.) She has a GED. (Tr. 34, 138.) King has worked as an automotive parts packager and a janitor. (Tr. 40-41,

138.) She stopped working on February 18, 2010, after injuring her shoulder at work. (Tr. 34-35, 118, 137, 161.)

### A. Procedural History

On November 16, 2010, Plaintiff applied for disability insurance benefits asserting that she became unable to work on February 18, 2010. (Tr. 118.) The Commissioner initially denied Plaintiff's disability application on January 12, 2011. (Tr. 53.) Plaintiff then requested an administrative hearing, and on September 28, 2011, she appeared with counsel before Administrative Law Judge ("ALJ") Elliott Bunce, who considered her case *de novo*. (Tr. 28-47.) In an October 27, 2011 decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (*See* Tr. 13-19.) The Social Security Administration's Appeals Council ("AC") granted Plaintiff's request for review, agreeing with Plaintiff that the ALJ incorrectly found that her date last insured was March 31, 2010. (Tr. 4.) The AC determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015. (*Id.*) Nonetheless, the AC found that Plaintiff was not disabled through October 27, 2011, and denied Plaintiff's application on March 28, 2012. (Tr. 6.) Plaintiff filed this suit on March 26, 2012. (Dkt. 1, Compl.)

### B. Medical Evidence

Orthopedic doctor Sidney Martin examined King on March 16, 2010, and diagnosed a rotator cuff tear with "pain out of proportion to clinical findings." (Tr. 162.) An x-ray of the right shoulder showed "very mild AC joint arthritis." (*Id.*) An MRI taken on March 12, 2010, showed "a 10 x 15 mm tear of the supraspinatus portion of her rotator cuff" and "the very mild osteoarthritis in the AC joint." (Tr. 162; *see* Tr. 190.) After physical therapy was unsuccessful, King underwent a right shoulder manipulation under anesthesia on July 2, 2010, for her "relatively small rotator cuff tear

2

and a frozen shoulder." (Tr. 152, 154.) At a follow-up appointment on August 19, 2010, Dr. Martin planned to "keep her out of work for another month while she does her therapy," "then go back to work light duty with limited use of the right arm, no overhead lifting with the right arm, and no lifting of greater than 10 pounds with that arm . . . for 3 months," and "[a]fter that she can work unrestricted." (Tr. 155.) On September 30, 2010, Dr. Martin reported that King was still in some pain and "doesn't quite have all of her motion" but he "assured her that the farther out that she goes and the more motion she gets back that the better she will do but overall I really think she will not ever have to have her rotator cuff fixed." (Tr. 154.) He told her to "give it at least three to six months" before returning. (*Id.*) In a statement dated October 15, 2010, Dr. Martin indicated that King could return to work on October 20, 2010, with the following restrictions to apply for one month: "light duty, limited use of right shoulder, no overhead or heavy lifting or greater than 10 lbs." (Tr. 176.)

King complained of chronic pain in the right knee to Mousa Mohamed, M.D., on February 9, 2010. (Tr. 178.) Although her chief complaint was identified as right shoulder pain, the examination record focused on her knee. (*Id.*) The history portion of the record stated:

> Patient has pain around the knee joint. Worse with movement of the knee and walking. Patient can move the knee OK though. No giving out of the knee, no clicking. Weight bearing is painful off and on. Patient feels some grinding in the knee. No tingling, numbness or changes to skin distal to the knee. No recent injuries to the knee.

(*Id.*) On examination, Dr. Mohamed noted:

> Tenderness over and around the R knee joint line. No effusion but there was some bony growth around the joint. There was grinding in the anterior part of the rt shoulder joint and the shoulder joint itself with movement. ROM of the knee is good. Knee is stable, anterior and posterior drawer signs are negative.

3

(*Id.*) Dr. Mohamed noted there was no swelling or tenderness related to the knee. (*Id.*) Although all of the examination notes related to King's knee, not her shoulder, Dr. Mohamed's assessment was "[c]hronic shoulder Pain, R. Due to OA with H/O of trauma at work will send for MRI o[f] the rt shoulder to R/O tear ligament." (*Id.*) The "Plan" portion of the examination notes provided: "1) Will have the patient use over the counter Tylenol arthritis for pain as needed. If that doesn't help then will consider something stronger. 2) ROM exercises too. 3) Back if pain is worse or if any instability in the knee (such as giving out or locking)." (*Id.*)

King returned on February 25, 2010. (Tr. 180.) Again her chief complaint was identified as right shoulder pain, but the examination record focused on her knee. (*Id.*) In fact, the history, findings on examination of the knee and leg, assessment, and plan from the February 9 examination were repeated word for word in the February 25 record. (*See* Tr. 178, 180.)

On May 18, 2010, King saw Dr. Mohamed again, this time complaining of abdominal pain and skin rash. (Tr. 182-83.) There was no mention in the examination record of either her knee or her shoulders. (*Id.*) At another examination on June 3, 2010, King again complained of abdominal pain as well as right shoulder pain and skin rash. (Tr. 184-85.) There was no mention of her knee. (*Id.*)

Dr. Mohamed's October 21, 2010 examination record for King was again virtually identical to the February 9 and February 25 notes, but the assessment portion added: "Want to have off work with limitation but she does not want the limitation. Will follow the ortho recommendation to go back to work with rt shoulder use limitation. Will send for orthopedic doctor will give vicodin." (Tr. 186; *see* Tr. 178, 180.)

4

The last record from Dr. Mohamed, for a November 23, 2010 examination, stated that King's chief complaint was right shoulder pain and continued: "Was []told to go back to work with limited use of the rt shoulder but she was sen[t] home. [N]ow the patient want[s] me to give her an unlimited off work. Patient want to be put off work or be put in disability because of the shoulder pain some thing orthopedic doctor do[es] not want to do[.]" (Tr. 188.) The history, examination notes, and plan for the November 23 record were identical to those regarding King's right knee pain in the February 9, February 25, and October 21 records. (*See* Tr. 178, 180, 186, 188.) The assessment portion was identical to that in the October 21 record. (*See* Tr. 186, 188.)

On November 30, 2010, Dr. J. A. Moore examined King and diagnosed a torn rotator cuff. (Tr. 195-198, 202.) Dr. Moore recommended a sick leave through January 3, 2011. (Tr. 202.) Dr. Moore examined King again in January 2011 and March 2011 and again found pain from her torn rotator cuff. (*See* Tr. 203-204, 205-206.) Dr. Moore also noted stomach pain in January 2011. (Tr. 205.)

### C. Testimony at the Hearing Before the ALJ

#### 1. *Plaintiff's Testimony*

At the hearing before ALJ Bunce on September 28, 2011, King testified that she stopped working in February 2010 "[d]ue to my injury of the right rotator cuff." (Tr. 35.) Her testimony focused on the problems with her right shoulder and right arm. (See Tr. 35-38.) She also answered questions about her work as a parts packager and janitor. (Tr. 40-41.)

#### 2. *The Vocational Expert's Testimony*

The ALJ solicited testimony from a vocational expert ("VE") to determine whether jobs would be available for someone with functional limitations approximating Plaintiff's. The ALJ

asked about job availability for a hypothetical individual of Plaintiff's age, education, and work experience who was capable of "work at the light exertional level that does not require overhead work or lifting over 10 pounds with the dominant arm." (Tr. 43.) The VE testified that such an individual could perform work as an information clerk and as an usher. (Tr. 42-43.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act, disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that

>accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

When the AC notified King that her request for review was granted, it proposed to issue a decision finding that she was not disabled at any time from her alleged onset date through the ALJ's decision date, October 27, 2011. (Tr. 4.) King did not submit any comments or additional evidence. (*Id.*) The AC concluded that since no new evidence was submitted, "[t]his means that the Administrative Law Judge considered all the medical evidence of record." (Tr. 5.) Therefore, the AC "agree[d] with the Administrative Law Judge's findings at steps one through five of the sequential evaluation process." (*Id.*)

At step one, ALJ Bunce found that Plaintiff had not engaged in substantial gainful activity from the alleged disability onset date of February 18, 2010, through March 31, 2010. (Tr. 15.) At step two, he found that Plaintiff had the following severe impairments: rotator cuff tear of the dominant (right) shoulder; osteoarthritis of the dominant (right) shoulder. (*Id.*) He found that her right knee and abdominal complaints were not severe impairments. (Tr. 15-16.) Next, the ALJ concluded that she did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 16.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to "perform work that does not require: exertion above the light level (20 CFR 404.1567(b)); or overhead work; or lifting over 10 pounds with the dominant arm." (Tr. 16.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant

work. (Tr. 17.) At step five, the ALJ found that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, based on the vocational expert's testimony that someone of Plaintiff's age, education, work experience, and residual functional capacity could perform such representative occupations as information clerk (85,000 jobs in the national economy) and usher (85,000 jobs in the national economy). (Tr. 18-19.) The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date through March 31, 2010. (Tr. 19.)

The AC noted that "the medical evidence contained in Exhibits 1F through 5F is dated after March 2010 so the Administrative Law Judge assessed the claimant's condition after the erroneous date last insured." (Tr. 5.) The AC concluded that "the claimant has not been disabled as defined in the Social Security Act at any time through October 27, 2011, the date of the Administrative Law Judge's decision." (*Id.*)

## III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks

omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. ANALYSIS

As Defendant points out, the Appeals Council's decision is the final decision subject to judicial review in this case, *see* 20 C.F.R § 404.981, but Plaintiff focuses on the ALJ's findings without mentioning the AC decision. (Def.'s Mot. Summ. J. at 5 n.1.) Because the Appeals Council expressly agreed with all of the ALJ's findings other than the date last insured (Tr. 5), the Court will assume that Plaintiff challenges the ALJ's findings as adopted by the AC.

Plaintiff argues that the ALJ erred by failing to include her "right knee chronic pain with painful weight bearing and pain worse with movement of the knee and walking" in the hypothetical question posed to the vocational expert. (Pl.'s Mot. Summ. J. at 7.) She complains that "[t]he ALJ takes it upon himself to reject the records related to the right knee and just find that they are not severe," but "[o]bviously they are severe if in fact Ms. King had to complain about them to her doctor and that she has chronic knee pain." (*Id.*) According to Plaintiff's motion, "[b]ased on the medical records from Dr. Mohamed, the treating physician, Ms. King suffers with chronic right knee pain making it very difficult to perform any activity involving walking or standing," which should have precluded the usher or lobby attendant and information clerk jobs identified by the VE because "[b]oth of these jobs require standing and walking." (*Id.*)

The Commissioner argues that "no medical source provided a diagnosis pertaining to [King's] right knee condition or any specific treatment recommendations," and "she offers no evidence other than her subjective complaints to Dr. Mohamed," which "alone would not even suffice to show that she had the impairment, let alone that the impairment caused limitations so severe that she could not perform even light work." (Def.'s Mot. Summ. J. at 6-7.) The Court agrees with the Commissioner.

An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ considered King's knee impairment at step two and concluded: "the claimant does not have a severe impairment of the right knee, that is, one that has been shown to have persisted at the severe level for 12 consecutive months or that has had more than a minimal effect on the claimant's ability to perform work-related functions." (Tr. 15.) The ALJ considered Dr. Mohamed's examination notes

regarding "tenderness around the right knee joint," applied the correct legal standard, and properly determined that the impairment was not severe.

Of course, even non-severe impairments must be considered throughout the disability evaluation. *See* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").[1] It is not apparent from the ALJ's opinion whether he considered King's knee impairment in steps three through five. (*See* Tr. 16-19.) But "it is well settled that: '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky*, 167 F. App'x at 507-508 (quoting *Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)). According deference to the ALJ, the Court assumes that he considered King's non-severe knee impairment throughout the disability evaluation but concluded that it should not be part of the RFC and the hypothetical question posed to the VE.

Substantial evidence supports the ALJ's decision not to include King's knee impairment in the RFC and the hypothetical question posed to the VE. The only evidence in the record regarding King's knee pain was a handful of examination notes from Dr. Mohamed. Those notes reported King's subjective complaints of pain and Dr. Mohamed's examination finding tenderness and a bony growth. But they also recorded King's report that she "can move the knee OK though" and Dr. Mohamed's examination finding that her range of motion of the knee "is good." (Tr. 178, 180, 186, 188.) There was no testimony from Plaintiff about her knee impairment, at the hearing or otherwise. (*See* Tr. 33-41.) When asked about her disabling conditions in application paperwork, King

---

[1] Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *Heckler v. Edwards*, 465 US 870, 873 n.3 (1984).

11

consistently identified only her shoulder issues and did not mention the knee. (*See* Tr. 137, 146.) There was no evidence—from Dr. Mohamed, King herself, or anyone else—that King's knee pain created any functional limitations or had any effect whatsoever on her ability to work. It was reasonable for the ALJ to conclude that it did not. Indeed, substantial evidence would not have supported a contrary finding.

Although Plaintiff does not argue that the ALJ violated the rule requiring deference to opinions of a treating physician, the Court notes in an abundance of caution that the rule does not apply here. The evidence regarding King's knee impairment did not constitute a medical source opinion that must be accorded deference because there was no diagnosis or functional analysis from Dr. Mohamed about the knee impairment. The Sixth Circuit has held that the treating source rule does not apply unless there is a "genuine assertion by the treating physician of an opinion involving the claimant's 'symptoms, diagnosis, and prognosis.'" *Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009); *see* 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

## V. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that substantial evidence supports the ALJ's decision. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 16) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                    s/Laurie J. Michelson
                                                    LAURIE J. MICHELSON
                                                    UNITED STATES MAGISTRATE JUDGE

Dated: June 20, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 20, 2013.

                                                    s/Jane Johnson
                                                    Deputy Clerk